1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5             FOR THE DISTRICT OF ARIZONA
6
7   JAY DAVID RAMSEY, SR.            )
                                     )
8            Petitioner,             )    No.   CV 06-648-TUC-FRZ (BPV)
    vs.                              )
9                                    )
                                     )    **REPORT AND RECOMMENDATION**
10  I. BARTOS, Warden, et al.,       )
                                     )
11           Respondents.            )
                                     )

12
13          On February 17, 2006, Petitioner, an inmate confined in the Arizona State
14   Prisons Complex in Buckeye, Arizona, filed a *pro se* Petition for Writ of Habeas
     Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254 ("Petition").
15   (Doc. No. 1)  Named as Respondent in the Petition is Warden I. Bartos.  The Attorney
16   General of the State of Arizona is named as an additional Respondent.  Respondents
17   filed an Answer ("Answer") to the Petition on April 9, 2007, with exhibits A through
18   FF attached.  (Doc. No. 4)  Petitioner filed a Reply on April 30, 2007, with exhibits 1
19   through 9 attached.  (Doc. No. 9)
20          Pursuant to the Rules of Practice of this Court**,** this matter was referred to
21   Magistrate Judge Bernardo P. Velasco for a Report and Recommendation on October
22   1, 2007.
23          For the reasons discussed below, the Magistrate Judge recommends that the
24   District Court enter an order dismissing the Petition.
25
26
27
28

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     Indictment

On October 18, 2001, Petitioner was indicted by the Grand Jurors of Pima County, Arizona, with four counts of sexual abuse of a minor under fifteen, class three felonies (Counts 1, 3, 5, 7), four counts of sexual conduct with a minor under fifteen, class two felonies (Counts 2, 4, 6, 8 ), and two counts of furnishing obscene or harmful items to a minor, class four felonies (Counts 9, 10).  (Answer, Ex. H) The State further alleged that all counts were offenses not committed on the same occasion consolidated for trial; counts one through eight were offenses involving dangerous crimes against children; and counts nine and ten were committed for the purpose of sexual gratification by defendant.  (Id.)

## B.     Motion to Dismiss

The Arizona Court of Appeals accepted jurisdiction of Petitioner's challenge to the trial judge's order denying Petitioner's motion to dismiss eight of the ten counts alleged in the indictment as duplicitous.  (Answer, Ex. I.)  Because the court of appeals found that, based on the manner in which the counts were charged, they were in fact duplicitous, the court granted relief, and vacated the trial judge's order.

## C.     Second Indictment

On October 1, 2002, after remand of the sexual abuse and sexual conduct counts to the grand jury, Petitioner was indicted with thirty-two (32) counts of sexual abuse of a minor under fifteen, class three felonies (Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64), and thirty-two (32) counts of sexual conduct with a minor under fifteen, class two felonies (Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, 63).  (Id., Ex. J)  The State further alleged that all counts were offenses not committed on the same occasion consolidated for trial; counts one through eight were offenses involving dangerous crimes against children; and counts

nine and ten were committed for the purpose of sexual gratification by defendant.  (Id.) Allegations of separate offenses consolidated for trial and offenses involving dangerous crimes against children were again filed by the State.  (Id.)  Counts 9 and 10 from the original indictment, charging Petitioner with furnishing obscene or harmful items to a minor, were consolidate with the second indictment, and were renumbered as counts 65 and 66 to the second indictment.  (Answer, Ex. K)

D.     Pretrial Motions

Prior to Petitioner's first trial, Petitioner filed a Motion to Sever/Motion to Preclude.  (Answer, Ex. N)  Petitioner argued that the evidence the State would be moving to admit in support of counts five and six, the furnishing counts, would be too inflammatory and prejudicial as to counts one through four, the sexual abuse and sexual conduct counts, and that therefore the State should be precluded from introducing evidence regarding the furnishing counts in relation to the sexual abuse or conduct counts and those counts should be severed from the furnishing counts.  (Id.)

E.     First Trial

The case proceeded to trial.  After previously hearing argument from counsel (Answer, Ex. A), the trial court ruled on the admissibility of the evidence on the second day of trial, finding the possession of stories and videos which depict sex between fathers and daughters or sex between adult males and young girls admissible under Rule 404(b) and 404(c); finding the notebook at issue admissible, and the evidence sufficient to prove that the defendant possessed the notebook and showed it to his daughter, and that the evidentiary value was not outweighed by unfair prejudice and other Rule 403 concerns .  (Answer, Ex. P)

On December 13, 2002, at the close of trial on the merits, Petitioner moved for a mistrial and the trial court granted the motion.  (Id., Ex. L) Prior to the second trial, the State moved to dismiss with prejudice counts 5 through 64 and proceed to trial on

Counts 1 through 4, 65 and 66 (renumbered as counts 5 and 6).  (Id., Ex. M) The trial court granted the motion.  (Id.)

F.    Second Trial

The case proceeded to trial a second time.  On day four of the jury trial, the trial court granted Petitioner's Rule 20 Motion for Judgment of Acquittal on Count One. (Answer, Ex. Q, and E (Reporter's Transcript ("RT") 2/19/03 at 97)).  On February 21, 2003, at the close of trial on day six, the jury found Petition not guilty of Count Two, and left the verdicts blank for Counts Three and Four.  (Answer, Ex. R) The jury found Petitioner guilty of Counts Five and Six.  (Id.)

G.    Motion for New Trial

Petitioner filed a motion for a new trial.  (Answer, Ex. S) Petitioner filed a pro se supplement to the motion for a new trial.  (Id., Ex. T)  The trial court denied Petitioner's motion for a new trial (Id., Ex. U)

H.    Sentencing

On October 30, 2003, the trial court sentenced Petitioner on Count Five to the presumptive term of two and a half years' imprisonment in the Arizona Department of Corrections.  (Id., Ex. V, at 2)    The court gave Petitioner credit for 750 days presentence incarceration credit.  (Id.)  As to Count 6, the court suspended imposition of sentence, and placed Petitioner on a period of 4 years probation commencing upon completion of the sentence imposed in Count Five.  (Id., Ex. V, at 3) The conditions of probation included sex offender conditions.  (Id.)

I.    Post-Conviction Relief

On October 31, 2003, Petitioner filed a notice of post-conviction relief.  (Id., Ex. W)  Counsel was appointed on November 18, 2003, (Petition, Ex. D) and, apparently, at some point, became Petitioner's acting counsel and moved for a stay of his Rule 32 petition due to the loss in the mail of the petition that had been sent to advisory counsel for filing, and the inability of Petitioner to work on both his petition for review to the

- 4 -

Arizona Supreme Court simultaneously with his petition for post-conviction relief. (Petition, Ex. F)  The trial court granted an extension of time until thirty days after filing of the petition for review.  (Id.)  No petition for post-conviction relief was filed, and, on October 6, 2006, the trial court summarily dismissed Petitioner's Notice of Petition for Post-Conviction Relief for failing to meet timeliness requirements pursuant Rule 32.4(c), Ariz. R. Crim. P. (Answer, Ex. X)

        J.      <u>Appeal</u>

      Petitioner, acting *in propria persona*, with advisory counsel, filed a notice of appeal on October 30, 2003.  (Answer, Ex. Y)  Petitioner filed an opening brief on May 3, 2002.  (Id., Ex. Z.)  Petitioner raised the following claims:

    1.    The trial court erred and abused its discretion when it reversed its ruling and admitted evidence previously ruled inadmissible.

    2.    The trial court committed fundamental error and abused its discretion in rendering an unwarranted pretrial ruling under Rule 404(c).

    3.    The trial court erred in reversing its previous rulings with regard to admissibility of pornographic stories (especially after the defense had concluded its case) because the stories were too inflammatory and unfairly prejudicial to present to the jury, thus violating "law of the case", provision of Rule 16.1, and finality of pretrial rulings.

    4.    The state used intentional prosecutorial misconduct aimed at preventing an acquittal.

    5.    The trial court erred and abused its discretion when it denied Appellant's motion for new trial.

    6.    Appellant was denied a fair trial because of the bias of the judge.

    7.    Prosecutor's statements during closing arguments were impermissible comments on appellant's failure to testify on his own behalf; the trial court erred in denying appellant's motion for mistrial; prosecutor's actions constitute intentional prosecutorial misconduct.

(Id., Ex. K.)

1    After the appeal was fully briefed, on August 31, 2005, the Arizona Court of

2  Appeals issued its memorandum decision affirming Petitioner's conviction and

3  sentence.  (Id., Ex. CC.)  On October 14, 2005, Petitioner filed a Petition for Review

4  to the Supreme Court.  (Id., Ex. DD)  The Supreme Court denied review on June 27,

5  2006.  (Id., Ex. EE)

6    K.    Federal Habeas

7    Petitioner filed the present petition for habeas corpus in the District Court on

8  December 22, 2006.  The Petition raises the following grounds for relief:

9    5th and 14th Amendments right to due process and the 6th Amendment
     right to a fair trial – unfairly prejudicial evidence.
10
(Doc. No. 1, at 5)
11
     Respondents filed an answer to the Petition on April 9, 2007.   Petitioner
12
submitted a reply on April 30, 2007.
13
**II.   DISCUSSION**
14
     A.    Standard of Review
15
     Because Petitioner filed his petition after April 24, 1996, this case is governed
16
by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)
17
("AEDPA").
18
     B.    Timeliness
19
     A one year period of limitation shall apply to an application for writ of habeas
20
corpus by a person in custody pursuant to the judgment of a State court.  28 U.S.C. §
21
2244(d)(1).
22
     C.    Exhaustion
23
     A federal court may not grant a petition for writ of habeas corpus unless the
24
petitioner has exhausted the state court remedies available to him. 28 U.S.C. § 2254(b);
25
*Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989).  The
26
exhaustion inquiry focuses on the availability of state court remedies at the time the
27

28                                    - 6 -

1    petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,*

2    526 U.S. 838 (1999). Exhaustion generally requires that a prisoner give the state courts

3    an opportunity to act on his claims before he presents those claims to a federal court.

4    *Id.* A petitioner has not exhausted a claim for relief so long as the petitioner has a right

5    under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

6       A habeas petitioner may exhaust his claims in one of two ways. First, a claim

7    is exhausted when no remedy remains available to the petitioner in state court. *See* 28

8    U.S.C. § 2254(b)(1)(A). Second, a claim is exhausted if there is an absence of available

9    state corrective process or circumstances exist that render such process ineffective to

10    protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

11       To meet the exhaustion requirement, the petitioner must have "fairly present[ed]

12    his claim in each appropriate state court...thereby alerting that court to the federal nature

13    of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-

14    66 (1995). A petitioner fairly presents a claim to the state court by describing the

15    factual or legal bases for that claim and by alerting the state court "to the fact that

16    the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513

17    U.S. at 365-366. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001)

18    (same). Mere similarity between a claim raised in state court and a claim in a federal

19    habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

20       Furthermore, to fairly present a claim, the petitioner "must give the state courts

21    one full opportunity to resolve any constitutional issues by invoking one complete

22    round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

23    Once a federal claim has been fairly presented to the state courts, the exhaustion

24    requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas

25    petitions, other than those concerning life sentences or capital cases, the claims of

26    Arizona state prisoners are exhausted if they have been fairly presented to the Arizona

27    Court of Appeals either on appeal of conviction or through a collateral proceeding

28

1  pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. *Swoopes v. Sublett,*

2  196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied* 529 U.S. 1124 (2200).

3        In some instances a claim can be technically exhausted even though the state

4  court did  not address the merits.  This situation is referred to as "procedural bar" or

5  "procedural default."  A claim is procedurally defaulted if the state court declined to

6  address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d

7  1223, 1230 (9th Cir. 2002).  Procedural default also occurs if the claim was not

8  presented to the state court and it is clear the state would now refuse to address the

9  merits of the claim for procedural reasons.  *Id.*  The procedural bar provides an

10  independent and adequate state-law ground for the conviction and sentence and, thus,

11  prevents federal habeas corpus review unless the petitioner can demonstrate cause and

12  prejudice for failing to raise the claim in the state proceedings. *Gray  v. Netherland,*

13  518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495

14  (1986); *Franklin*, 290 F.3d at 1231. Accordingly, the procedural default doctrine

15  prevents state prisoners from obtaining federal review by allowing the time to run on

16  available state remedies and then rushing to federal court seeking review. *Coleman v.*

17  *Thompson,* 501 U.S. 722, 731-732 (1991).

18        If a claim has never been presented to the state court, a federal habeas court may

19  determine whether state remedies remain available.[1] *See Harris v. Reed,* 489 U.S. 255,

20  263 n.9 (1989); *Franklin,* 290 F.3d at 1231.  In Arizona, such a determination often

21  _____

22  [1]        Although the Ninth Circuit recently suggested that under
Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a

23        district court can decide whether state remedies remain available
        for claims that require a knowing, voluntary, and intelligent

24        waiver *see Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), *cert.*

25        *denied,* __ U.S. __, 126 S.Ct. 1336 (2006), this Court need not
        address such waiver because it has not been affirmatively raised

26        by Petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th

27        Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

28

involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings.   For example, Ariz.R.Crim.P.  32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to  convictions or sentences.  Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[2] which were justifiably omitted from a prior petition.  Ariz.R.Crim.P. 32.2.

In summary, failure to exhaust and procedural default are different concepts. *Franklin*,  290 F.3d at 1230-1231.  Under both doctrines, the federal court may be required to refuse to hear a habeas claim.  *Id.*  The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.*  In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

---

[2]      Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt.  Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

1  D.    Cause and Prejudice

2          A petitioner may be relieved from a procedural default on a showing of cause

3  and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  "[T]he existence of

4  cause for a procedural default must ordinarily turn on whether the prisoner can show

5  that some objective factor external to the defense impeded counsel's efforts to comply

6  with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The

7  following objective factors may constitute cause: (1) interference by state officials, (2)

8  a showing that the factual or legal basis for a claim was not reasonably available, or (3)

9  constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner

10  must demonstrate that the alleged constitutional violation "worked to his actual and

11  substantial disadvantage, infecting his entire trial with error of constitutional

12  dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails

13  to establish cause, the court need not reach the prejudice prong.  To establish a

14  "fundamental miscarriage of justice" resulting in the conviction of one who is actually

15  innocent, a state prisoner must establish that it is more likely than not that no reasonable

16  juror would have found him guilty beyond a reasonable doubt in light of new evidence.

17  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

18          E.    Standard of Review: Merits[3]

19          Pursuant to the provisions of the AEDPA, the Court may grant a writ of

20  habeas corpus only if the state court proceeding:

21          (1)    resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal
22                  law, as determined by the Supreme Court of the United
                    States; or
23

24  _____

25  [3] Should the Court reject the Magistrate Judge's Report and
26  Recommendation, Respondents have requested leave to file a supplemental
     answer to address the merits of the claims raised in the petition.  (Answer,
27  at 18)

28                                  - 10 -

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## III.   ANALYSIS

### A.     Timeliness

Respondents do not contest the timeliness of the habeas petition.  A review of the petition suggests that it is timely.  Accordingly, this Court finds that the Petition is timely.

### B.     Ground One

Petitioner argues that the "the State of Arizona used evidence repeatedly deemed too inflammatory and unfairly prejudicial to Petitioner and that evidence was used to provoke the convictions as to counts 5 and 6 of the indictment violating Petitioner's 5th and 14th Amendment rights to Due Process and his 6th Amendment right to a fair trial and that there is insufficient evidence to support the convictions on those two counts." (Petition, at 5)

Respondents argue that Petitioner failed to properly exhaust his state court remedies for his claim, because he did not fairly present it in the Arizona courts, and it is procedurally defaulted.  (Answer, at 10)

#### 1.     *Relevant Facts*

Prior to Petitioner's first trial, Petitioner filed a Motion to Sever/Motion to Preclude.  (Answer, Ex. N)  Petitioner argued that a binder of pornographic stories the State would be moving to admit in support of counts five and six, the furnishing counts, would be too inflammatory and prejudicial as to counts one through four, the sexual abuse and sexual conduct counts, and that therefore the State should be precluded from introducing evidence regarding counts five and six, the furnishing counts, in relation to the sexual abuse or conduct counts and those counts should be severed from the furnishing counts.  (Id.)  Petitioner cited three reasons his motion should be granted.

First, there was a time differential between the obscene item charges on October 4, 2001, and the sexual abuse and conduct charges which occurred as much as four years earlier.  Second, the State's case was much stronger as to the furnishing obscene items charges.  Third, Petitioner argued that the probative value of the stories was greatly outweighed by the prejudice to defendant, and cited Rule 13.4 requiring severance to promote the interests of justice and Rule 404(c) requiring specific findings for the admission of acts like those alleged.  (Id.)

The trial court heard argument on Petitioner's motion regarding the admissibility of the evidence.  (Answer, Ex. A, RT 11/12/02)  Counsel for Petitioner argued that the evidence which should be precluded included  a story that was read by Petitioner to the minor victim, his daughter[4], on her birthday, along with a "whole stack of other documents."  (RT 11/12/02 at 44-45)  Petitioner stated that there was no evidence from the victim that any of the stories, other than the one that was read to her on her birthday[5], was shown to her during the roughly four years that she was alleged to have been abused by her father.  (Id. at 45)  Counsel argued that, the stories were remote in time, only the one story that was read to A.R. might be relevant,  the stories were other-acts evidence, and the State had not met its burden, under Rule 404(c)[6], of showing the

_____

[4]     Referred to hereafter as "A.R."

[5]     Petitioner's daughter reported her father's conduct to her mother shortly after her twelfth birthday, October 4, 2001.   (RT 11/12/02, at 43, Answer, Ex. N, Exhibit A - Interview with Detective Dollar)  An investigation ensued, and the initial indictment was handed down shortly thereafter. (Answer, Ex. H, Ex. N, Exhibit A - Interview with Detective Dollar)

[6]     In addressing the trial court's statement that "subsection (b) deals with other acts that are used to prove intent and motive and so on..." (RT 11/12/02 at 46)  Counsel stated, regarding 404(c) that it "did not exist until fairly recently, I forget exactly when it was, and I think it was modeled after the federal rule, to

1  stories were relevant, and, the stories were too prejudicial and inflammatory when

2  weighed against whatever relevance they do have, that the jury would convict Petitioner

3  once they read the stories.  (Answer, Ex. A, RT 11/12/02, at 45-49)

4          The State responded to Petitioner's arguments, arguing from two cases *United*

5  *States v. Yazzie*, 59 F.3d 807 (9th Cir. 1995) and *State v. Sharp*, 193 Ariz. 414 (1999),

6  noting particularly that *Yazzie* was a federal case from Arizona that defines "evidence

7  as unfairly prejudicial if it makes conviction more likely because it provokes an

8  emotional response in jury or otherwise tends to affect adversely the jury's attitude

9  toward the defendant, and, here's the key, wholly apart from its judgment as to his guilt

10 or innocence."  (Answer, Ex. A, RT 11/12/02, 52-53)

11         On the second day of trial, the trial court ruled on the motion, and recorded its

12 findings that:

13         ... under Rule 404(B) that the possession of stories and videos which
           depict sex between fathers and daughters or sex between adult males and
14         young girls is admissible to show intent and plan and absence of mistake
           or accident in this case.
15
           ... the same stories shall be admissible under Rule 404(C) because they
16         are relevant to show that the defendant had a character trait giving rise to
           an aberrant sexual propensity to commit the charged offense.
17
           ... the notebook is admissible, subject to the proper foundation being laid,
18         and that evidence is sufficient to prove that the defendant possessed the
           notebook and showed it to his daughter.
19
           ... defendant's possession of the notebook with the stories and related
20         videos provided a reasonable basis to infer that the defendant had an
           interest in sex between adults and young females, including familial sex.
21
           ... the evidentiary value is not outweighed by unfair prejudice and other
22         Rule 403 concerns.  The other acts are not remote in time and place; the
           evidence depicts the sexual preference at issue in this case; and there is
23         strong evidence that the defendant possessed the material.

24 (Answer, Ex. P, at 3)

25

26 _____

27         the propensity of - - in essence, in sex cases."

28                                    - 13 -

1    The court further held that, "while we would not provide the exact stories

2 themselves to the jurors, based on [Petitioner's counsel's] concern that they would just

3 be repulsed by the nature of the stories and reach verdicts based on that reaction, that

4 we'd allow a description of the contents of the notebook without the actual material

5 being provided, so I want a record of what I reviewed in reaching that decision." (RT

6 12/11/02 at 5)

7    In Petitioner's second trial, after an initial mistrial, A.R. testified that Petitioner

8 read a story to her from the binder about fathers teaching their daughters to have sex.

9 (Answer, Ex. C, RT 2/11/03, at 84) Then, after establishing that the binder was in

10 Petitioner's possession, Detective Roat testified regarding the content and nature of the

11 stories in the binder.  (Answer, Ex. D, RT 2/12/03, at 170–180) Detective Roat was

12 asked if the binder contained what he would describe as educational materials, or how

13 to teach children about sex. (Id., at 170) Detective Roat answered no to both questions.

14 (Id.)  Detective Roat was then asked what some of the titles of the stories were.  (Id.,

15 at 171-172) After several titles were recited, counsel for Petitioner objected, asking to

16 approach the court, and the following colloquy took place:

17    MR. HIGGINS:    Well, she's had him characterized, generally gone through

18                    five or six of them and telling what they're about, and

19                    she's gotten names of them.  And I think its more than

20                    what the Court said we could go with.  And then the Court

21                    precluded - -

22    THE COURT:    What we did was agree that the nature of these stories was

23                    so graphic, and I believe you characterized it as having

24                    such a likelihood and such a strong emotional reaction by

25                    the jury by reading them, that you requested whether,

26                    although, in all due respect, it would be properly

27

28                    - 14 -

|     |               |                                                                             |
| --- | ------------- | --------------------------------------------------------------------------- |
| 1   |               | admissible documents, that we didn't want to risk that                      |
| 2   |               | emotional reaction in the jury.                                             |
| 3   |               | And I'm sure I said at the time that having reviewed them                   |
| 4   |               | myself I agreed with you, that was likely to happen                         |
| 5   |               | because they would be disgusted by the stories.  But we                     |
| 6   |               | did agree that in fairness to the child, because they                       |
| 7   |               | corroborate her testimony, that there were stories about                    |
| 8   |               | sex.  And you know, she's characterized what the stories                    |
| 9   |               | say in different ways.                                                      |
| 10  |               | But the State has to have some ability here to characterize                 |
| 11  |               | the nature of these stories, and I don't know if they need                  |
| 12  |               | every single one of them, but - -                                          |
| 13  | MR. HIGGINS:  | I understand that and I think they've done that, so I'm just                |
| 14  |               | saying it ought to stop here.  I guess that's the point of my               |
| 15  |               | objection.                                                                  |
| 16  | THE COURT:    | Ms. Chi, do you plan to go through - -                                      |
| 17  | MS CHI:       | I'm going to flip through two more.                                         |
| 18  | THE COURT:    | How many more?                                                              |
| 19  | MS. CHI:      | The father and the daughter.                                               |
| 20  | THE COURT:    | I want to flip through the ones that discuss father and                     |
| 21  |               | daughter.                                                                   |
| 22  | THE COURT:    | Why don't you limit yourself to maybe - - how many more                     |
| 23  |               | of those?                                                                   |
| 24  | MS. CHI:      | There's a lot more.                                                         |
| 25  | THE COURT:    | Well, you can have him say how many stories there are,                      |
| 26  |               | but this is a compromise to keep from otherwise admitting                   |
| 27  |               | it.                                                                         |
| 28  |               |                                                                             |

- 15 -

1  MS. CHI:             I understand.

2  THE COURT:           So I'm going to give here some leeway to continue

3                       establishing the nature of the stories.

4  MR. HIGGINS:         Okay.

5  (Id. at 172-174) Detective Roat also testified to the content and nature of, Exhibit 6, a

6  handwritten story entitled "My Little Niece's Special Gifts," involving a man being

7  sexually involved with his eight year old niece. (Answer, Ex. D, RT 2/12/03, at

8  177–180)   Likewise, Petitioner's wife testified that the handwritten story was in

9  Petitioner's handwriting, found on a shelf underneath his blue jeans. (Id. at 121–22.)

10 Prior to the State resting, the State indicated that it still had some exhibits that it wanted

11 to move to admit. (Answer, Ex. E, RT 2/19/03, at 34) Petitioner agreed to let the State

12 move to admit those exhibits later, because he had several witnesses waiting to testify

13 at that point. (Id.)   After Petitioner's witnesses testified, the State moved to admit

14 Exhibit 6, the handwritten pornographic story.  (Id. at 77, 82)  Petitioner indicated that

15 he thought Exhibit 6 was included in the court's prior ruling that the stories' content and

16 nature could be discussed but they would not go to the jury. (Id. at 77–78) The court

17 stated, "Let me take a look at what it says. It will depend on the graphic nature. As I

18 pointed out a number of times, I have only reviewed and made a specific ruling on

19 certain materials. So this is—certainly the policy considerations that applied there will

20 also apply here, and I will take a look at the story and see." (Id. at 78.) The court held:

21     All right, I am going to admit Exhibit 6. I believe it's the most probative
       evidence that's been presented on defendant's aberrant sexual propensity
22
       to commit the crime charged. I am going to make sure we have
23     incorporated into this record the record from the first trial on why this is
24     admissible under Rule 404(c) as character evidence. I am requiring [sic]
25     under the rule permitting that evidence to make a record, and I have made
       that record previously, and I will affirm it at this time.
26

27

28                                      - 16 -

I will also make the additional findings. I believe the evidence is sufficient to permit the jury to find that the defendant committed the other act that was identified as being found with his clothing and by his wife in his home and as being in his handwriting; that the commission of this act, this story that was written, provides a reasonable basis to infer that the defendant had a character trait which gives rise to an aberrant sexual propensity to commit the crime charged.

And, finally, I will find that the evidentiary value of this act is not substantially outweighed by the danger of unfair prejudice, and other rule 403 issues. I believe this [sic] probative on intent. This is the issue in this case is whether the defendant committed the—particularly the first four counts as to whether the defendant intended to commit those acts.

As the trial progressed, it has been a theory of the defense that some of this evidence may not have been there, that the defendant's wife may have set up some of the scene, may have caused the implantation of false memories and so on. And, because this is in his own handwriting, it's the best evidence of his intent and the propensity.

(Answer, Ex. E, RT 2/19/03 at 84–85; Ex. Q) Petitioner pointed out to the court that the only evidence that suggested the story was in Petitioner's handwriting was testimony from his ex-wife, the person that Petitioner had suggested was trying to frame him. (Answer, Ex. E, RT 2/19/03 at 85)  The court agreed but stated that the credibility of his ex-wife's testimony was an issue that goes to the weight of the evidence. (Id.) Petitioner made no further objection regarding the admission of Exhibit 6 and allowing the jury to view it. (Id.)  After Petitioner's closing argument, the judge indicated for the record, that when she ruled on the admissibility of Exhibit 6, she did not believe that Exhibit 6 was part of the original materials she had reviewed and had sealed. (Answer, Ex. F, RT  2/20/03, at 66)  However, after reviewing the materials she was originally given to review, the judge discovered that Exhibit 6 was included. (Id.) Nonetheless,

1   the court affirmed its ruling that Exhibit 6 was admissible for all of the reasons that
2   were previously stated on the record. (Id. at 66–67.)

3          Petitioner filed a motion for a new trial, raising, among other issues, the
4   argument that the trial court erred in admitting Exhibit 6.  (Answer, Ex. S, at 2)
5   Petitioner argued that there was no evidence the victim had seen this story, and its
6   admission was grossly prejudicial and reversed the Court's previous ruling, upon which
7   defendant had relied.  (Id.)  Petitioner cited no authority, federal or otherwise, in
8   support of his argument.  Petitioner filed a *pro se* supplement to the motion for a new
9   trial, stating that the Court's initial ruling was based on the holding in *United States v.*
10  *Yazzie*, 59 F.3d 807.  (Id., Ex. T at 3) Petitioner argued that the unfairly prejudicial
11  evidence released to the jury provoked his conviction on the two furnishing counts,
12  citing *United States v. Horne*, 225 F.3d 549 (5th Cir. 2000).  Petitioner also argued that
13  a "[n]ew [t]trial is necessary when there is significant possibility that improperly
14  admitted prejudicial evidence had substantial impact on verdict, viewed in light of
15  entire record."  (Answer, Ex. T at 4) Petitioner further argued that he was denied the
16  right to a fair trial and due process of law because of intentional prosecutorial
17  misconduct by and through the admission of evidence repeatedly deemed unfairly
18  prejudicial as defined in *Yazzie*, and the last minute reversal of the trial court's rulings
19  made regarding the inadmissibility of evidence violated the required mandate of Rule
20  404(c)(3). (Answer, Ex. T at 4-5)  The trial court denied Petitioner's motion for a new
21  trial, finding that the items were properly admitted.  (Id., Ex. U)

22         In his appeal, Petitioner raised the issue of the trial court's reversal of its
23  previous rulings with regard to the admissibility of Exhibit 6.  Petitioner argued that
24  there were "two serious errors with the court's position."  (Answer, Ex. Z at 16)  First,
25  the court had already reviewed Exhibit 6 as part of the random sampling of material
26  used to determine all of the stories were unfairly prejudicial, and second, no stipulation
27  was ever made limiting her unfairly prejudicial inadmissibility determination to just the

28                                         - 18 -

1    random sampling of material provided by the State.   (Id. at 16-17)  Petitioner argued

2    that the court's admission of Exhibit 6 was erroneous, and an abuse of discretion under

3    state law.  (Id. at 17)  Petitioner further argued that the judge's action violated the "law

4    of the case" doctrine, citing state law, and the restrictions imposed by Rule 16.1(d),

5    Ariz.R.Crim.P., 17 A.R.S.  (Id. at 17)  Petitioner also argued that the court erred when

6    it held Exhibit 6 was admissible under the Rule 404(c) evidentiary ruling of December

7    11, 2002.  (Id. at 19)  Petitioner stated that the admission of Exhibit 6 denied him a fair

8    trial, citing U.S. Const., Amend. V.  (Answer, Ex. Z, at 24)

9          Petitioner separately argued that the trial court erred in denying his motion for

10    a new trail, stating that, under *United State v. Hoover*, 225 F.3d 549 (5th Cir. 2000), a

11    new trial is necessary when there is a significant possibility that improperly admitted

12    character evidence had substantial impact on the verdict.   (Answer, Ex. Z at 28)

13    Petitioner argued that the trial court deemed the stories to be unfairly prejudicial as

14    defined by *Yazzie*, 59 F.3d 807, *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.

15    1987), and *State v. Schurz*, 176 Ariz. 415 (1977).  Petitioner argued that the trial court

16    made the same two serious errors cited above, and that the trial court's "last day-last

17    minute" reversal of ruling improperly admitted bad character evidence prohibited by

18    Rule 403, Ariz.R.Evid., 17A A.R.S., and is a clear abuse of discretion as defined in

19    *State v. Douglas*, 87 Ariz. 182 (1960).  Additionally, Petitioner argued that there was

20    a significant possibility that improperly admitted character evidence had a substantial

21    impact on the verdicts in the case, and the trial court erred and abused its discretion

22    when it denied the motion for new trial.  (Id. at 29-30)

23          After the appeal was fully briefed, on August 31, 2005, the Arizona Court of

24    Appeals issued its memorandum decision affirming Petitioner's conviction and

25    sentence.  (Id., Ex. CC.)  The Court of Appeals held that the story was properly

26    admitted under both Rule 404(b) and (c), and, accordingly, found no abuse of discretion

27    in the trial court's admission of Exhibit 6. (Id., Ex. CC, at 6) Additionally, the appellate

28                                                - 19 -

1    court found that Rule 16.1(d) specifically permits a trial court to change pretrial rulings

2    for "good cause," and that the trial court did not abuse its discretion in doing so in this

3    case.  (Id., Ex. CC, at 6-7) The appellate court also found that Petitioner had not

4    demonstrated that the court abused its discretion in finding the probative value of the

5    evidence greater than its potential prejudice.  (Id., Ex. CC, at 7) The appellate court did

6    not address Petitioner's argument that the admission of Exhibit 6 constituted

7    fundamental error because he had objected to its admission, and thus addressed only his

8    specific arguments on appeal.  (Id., Ex. CC, at 8) Finally, the appellate court found that

9    the trial court did not err in denying Petitioner's motion for a new trial, as there was no

10   error in the admission of Exhibit 6.  (Id., Ex. CC,  at 809)

11           On October 14, 2005, Petitioner filed a Petition for Review to the Supreme

12   Court.  (Id., Ex. DD) Petitioner argued that the Court of Appeals erred by failing to

13   establish just how many times a trial court can review a prior ruling before it is

14   considered unreasonable and an abuse of discretion, and erred in this case by finding

15   that the trial court did not abuse its discretion by allowing four reconsiderations of the

16   same evidence without a showing of good cause.  (Id., Ex. DD.)   The Supreme Court

17   denied review in a minute order issued on June 27, 2006.  (Id., Ex. EE)

18                    2.    *Exhaustion*

19           Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were

20   violated when the trial court admitted into evidence Exhibit 6.  Respondent asserts that

21   Petitioner has failed to properly exhaust this claim by failing to raise this issue as a

22   federal claim, instead centering his objections to Exhibit 6 entirely around rules of

23   evidence and state law.  The Magistrate Judge concurs in Respondents' assertion.

24           During his trial court proceedings, specifically, Petitioner's Motion to Sever/

25   Motion to Preclude, Petitioner did not raise any federal constitutional arguments against

26   the admission of the stories, generally, or the handwritten story (Exhibit 6), specifically.

27   (See Answer, Ex. N) Likewise, during oral argument on the admission of the stories,

28                                          - 20 -

1   Petitioner never raised a federal constitutional issue.  (Answer, Ex. A, RT 11/12/02, at

2   44–62; Ex. E., RT 2/19/03, at 77–78, 85)

3      On direct appeal, Petitioner argued that the trial court abused its discretion by

4   admitting the handwritten pornographic story into evidence. (Answer, Ex. Z, at 8–27.)

5   Petitioner specifically argued the trial court erred in making a ruling that the story was

6   admissible under Rule 404(c), the trial court violated the law of the case doctrine by

7   admitting the story, and the State seeking the admission of the handwritten story

8   constituted prosecutorial misconduct. (Id.)  Petitioner argued that the court's Rule

9   404(c) ruling violated Appellant's "right to due process specified by Rule 15.1(a)(6)

10  and Rule 404(c), and because the court and the State later rely on this ruling to admit

11  evidence, it was grossly prejudicial to Appellant and denied him a fair trial.  See U.S.

12  Const., Amend. V."  (Answer, Ex. Z, at 8-10, 24)

13     Petitioner also cites to his supplement to his motion for a new trial, again citing

14  to United States v. Yazzie, 59 F.3d 807 (9th Cir. 1995), and asserting that his arguments

15  were based solely on federal law.  (Reply, Doc. No. 9, at 12) Petitioner argues that the

16  trial court had adequate notice that Petitioner was arguing a federal claim by "the

17  repeated citation of federal rules of evidence and controlling federal case law."  (Id.)

18     Petitioner also argued in his appeal that the stories were inflammatory and

19  unfairly prejudicial, citing Yazzie, 59 F.3d 807,  and United States v. Johnson, 820 F.2d

20  1065 (9th Cir, 1987).  (Answer. Ex. Z, at 11) Petitioner argued that the trial court erred

21  and abused its discretion when it changed its ruling, violating both the "law of the case"

22  doctrine and the restrictions imposed by Rule 16.1(d), Ariz.R.Crim.P., 17.A.R.S.

23  (Answer, Ex. Z, at 17)  Petitioner further argued that any probative value of Exhibit 6

24  was substantially outweighed by the danger of unfair prejudice, citing Rule 403,

25  Ariz.R.Crim.P.  (Answer, Ex. Z, at 21) Petitioner cited several state cases in support of

26  his argument that evidence, even if relevant, should be excluded if its probative value

27  is substantially outweighed by the danger of unfair prejudice, or has a tendency to

28

1   suggest a decision on an improper basis such as emotion, sympathy or horror. (Answer,

2   Ex. Z, at 21-22)

3        Finally, Petitioner's petition for review to the Arizona Supreme Court was

4   devoid of any federal legal claim. (Answer, Ex. DD)

5        Petitioner first contends that Ariz.R.Evid., Rules 401, 402, 403 and 404 were

6   adopted and codified verbatim in 1979 by the Arizona State Legislature from the

7   Fed.R.Evid.. Rules 401, 402, 403 and 404 respectively. "There is no independent

8   construct in any part of these rules adopted by the Arizona state legislature." (Reply,

9   Doc. No. 9 at 11) Thus, Petitioner asserts that his argument "was fundamentally a

10  federal argument." (Id.)

11       The Federal Rules of Evidence do not apply to Petitioner in his state court

12  proceedings. *See* Fed.R.Evid. 101. Furthermore, Arizona Rules of Evidence, Rule 404

13  in particular, was amended in 1997 to create a new Rule 404(c) dealing with the

14  admission of other act evidence in sexual misconduct cases. This new rule is not a

15  verbatim codification of the federal rules. The comment to Rule 404(c), in relevant

16  part, states the following:

17          Subsection (c) of Rule 404 is intended to codify and supply an analytical

18          framework for the application of the rule created by case law in *State v.*

19          *Treadway*, 116 Ariz. 163 [] (1977) and *State v. McFarlin*, 110 Ariz. 225

20          [] (1973). The rule announced in *Treadaway* and *McFarlin* and here

21          codified is an exception to the common-law rule forbidding the use of

            evidence of other acts for the purpose of showing character or propensity.

22       The Arizona Supreme Court notes that ultimately they "rejected the broad scope

23  of the federal rule, and instead adopted a compromise version. That compromise is

24  codified in Rule 404(c)..." *State v. Aguilar*, 209 Ariz. 40, 46 (2004). Thus, assuming

25  *arguendo* that it would be sufficient to cite a state rule that has as its root source an

26

27

28

1    identical federal rule, in this instance, the state has explicitly rejected, at least as to Rule

2    404(c), the interpretive meaning of the rule.

3         Even if the rules are identical, as in Fed.R.Evid. 403 and Ariz.R.Evid. 403, it

4    cannot be enough that the source of the Arizona Rule was federal law.  Once adopted,

5    a state is free to interpret its own rules, within constitutional limit, and the resultant state

6    case law may diverge from the federal interpretation of an identical rule.  *See eg.*

7    *Logerquist v. McVey*, 196 Ariz. 470 (2000)(interpreting Arizona Rule of Evidence 702

8    differently than its federal counterpart).    Furthermore, the Ninth Circuit has

9    acknowledged the rejection of the "essentially the same" standard, and, if a petitioner

10   "fails to alert the state court to the fact that he is raising a federal constitutional claim,

11   his federal claim is unexhausted regardless of its similarity to the issues raised in state

12   court."  *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) (Petitioner did not "fairly

13   present" his federal claim in state court by limiting his arguments exclusively to state

14   evidentiary law, despite arguing that prior act evidence "infringed on his right to present

15   a defense and receive a fair trial.").

16        It is also not enough that, in reference to the interpretation of Arizona Rule of

17   Evidence 403 that Petitioner, or even Respondent or the court, cited *Yazzie*, *supra*, or

18   *Johnson*, *supra*.  As a case with factual similarities to the instant case, and in which the

19   Ninth Circuit defined unfair prejudice under Fed.R.Evid. 403, *Yazzie* did neither

20   explored nor articulated nor even suggested a relationship between the federal rules of

21   evidence and a defendant's constitutional right to due process and a fair trial.  *Yazzie*,

22   59 F.3d at 811.  Citation to *Yazzie* in the instant case did not serve to exhaust Petitioners

23   constitutional claims.

24        Petitioner did argue that the court's Rule 404(c) ruling violated Appellant's

25   "right to due process specified by Rule 15.1(a)(6) and Rule 404(c), and because the

26   court and the State later rely on this ruling to admit evidence, it was grossly prejudicial

27

28                                        - 23 -

1  to Appellant and denied him a fair trial.  <u>See</u> U.S. Const., Amend. V."  (Answer, Ex.

2  Z, at 8-10, 24)

3       This, however, is precisely the conclusory, "scattershot" type of citation,

4  "divorced from any federal legal theory" the Ninth Circuit found insufficient to fairly

5  present a federal legal claim in *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir.

6  2005).

7       As previously noted by the Ninth Circuit, the "failure to comply with the state's

8  rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.

9  While adherence to state evidentiary rules suggests that the trial was conducted in a

10 procedurally fair manner, it is certainly possible to have a fair trial even when state

11 standards are violated; conversely, state procedural and evidentiary rules may

12 countenance processes that do not comport with fundamental fairness ... The issue for

13 us, always, is whether the state proceedings satisfied due process; the presence or

14 absence of a state law violation is largely beside the point." *Jammal v. Van de Kamp*,

15 926 F.2d 918 (9th Cir. 1991)(citations omitted).

16      To fairly present a federal claim, a petitioner must describe both the operative

17 facts and the federal legal theory. *Baldwin*, 541 U.S. at 28.  It is not enough that all of

18 the facts necessary to support the federal claim were before the state court or that a

19 "somewhat similar" state law claim was raised. *Baldwin*, 541 U.S. at 28 (stating that

20 a reference to ineffective assistance of counsel does not alert the court to federal nature

21 of the claim).  Rather, the habeas petitioner must cite in state court to the specific

22 constitutional guarantee upon which he basis his claim in federal court. *Tamalini v.

23 Stewart*, 249 F.3d 895, 898 (9th Cir. 2001).  Because Petitioner cited solely to Arizona

24 law in support of his challenge to the evidentiary rulings, he has not exhausted a federal

25 challenge to the ruling.

26      Although it is evident that Petitioner did not articulate his federal claim in state

27 court, it does give this Court a moment's pause, in that, by design, the application of

28                                    - 24 -

Rule 403 to propensity evidence eliminates due process concerns posed by the rules of evidence. *See United States v. Lemay*, 260 F.3d 1018, 1026–27 (9th Cir. 2001) (Holding that as long as the protections of Rule 403 remain in place, so that trial judges retain the authority to exclude potentially devastating evidence, rule allowing admission of propensity evidence in sex crime cases is constitutional.)

Despite these concerns, however, it was precisely Ariz.R.Evid. 403 that the Ninth Circuit considered in *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005). The trial judge in Castillo's trial allowed the jury to view a videotape of the police interrogating Castillo that he argues was highly prejudicial. *Castillo*, 399 F.3d at 996. Following the trial court's decision to admit the videotape, the court expressed its misgivings about the prejudicial effects of the videotape, and gave the jury a limiting instruction. *Id*., at 997. Castillo was convicted, and his convictions were affirmed on appeal. *Id*. Castillo filed a federal habeas petition alleging the trial court denied him a fair trial in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution by admitting the videotape of the interrogation and arrest. *Id.*, at 998. The state argued that Castillo failed to exhaust his federal due process claim in the Arizona state courts and that his claim was procedurally defaulted. *Id.*

The Ninth Circuit considered Castillo's appellate briefing to determine whether he fairly presented his federal due process claim to the Arizona courts. *Id.* The Ninth Circuit held that Castillo's brief to the court of appeals needed to apprise Arizona that he was making a claim under the U.S. Constitution and describe both the operative facts and the federal legal theory on which his claim is based so that the state courts could have a fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim, and he must have characterized the claims specifically as federal claims. *Id.*, at 999 (citations and internal quotation marks omitted).

The Ninth Circuit first rejected Castillo's contention that his motion for a new trial, trial supplemental briefing, and trial motion to reconsider fairly presented his

1   federal, constitutional due process claim to the Arizona Court of Appeal, stating that the
2   Supreme Court decision in *Baldwin*, 541 U.S at 31, that the Arizona appeals court was
3   not required to comb the trial court's decision to discover Castillo's federal
4   constitutional issue, foreclosed that argument. *Castillo*, 399 F.3d at 1000.

5         Next, the Ninth Circuit considered Castillo's claim in his appellate brief
6   "Whether the trial court committed fundamental error by allowing the jury to view
7   highly prejudicial videotapes of Appellant's interrogation and arrest and in failing to
8   grant the subsequent motions for a new trial or the motion for reconsideration?" *Id.*
9   The Ninth Circuit found this claim silent as to any federal due process claim. *Id.*
10  Similarly, the argument section was all but devoid of any language presenting his
11  federal due process argument to the Arizona Court of Appeals.  Castillo focused his
12  argument on whether the trial court should have excluded the videotape because it was
13  prejudicial under Arizona Rules of Evidence 403. *Id.*  "Nowhere in the argument
14  concerning the videotape, until the penultimate sentence, did Castillo even refer to the
15  U.S. Constitution.  Finally, at the end of his argument, Castillo claimed that '[b]ecause
16  this improper evidence was admitted, Appellant was denied a fair trial in violation of
17  the United States and the Arizona Constitutions." *Id.* at 1000-1001.  Castillo concluded
18  his brief by stating that "[t]he gross violations of Appellant's Fifth, Sixth, and
19  fourteenth Amendment rights requires [sic] that his convictions and sentences be
20  reversed and that he be granted a new trial consistent with due process of law." *Id.* at
21  1002.

22        The Ninth Circuit found that Castillo failed to exhaust the federal constitutional
23  claims, stating that he could not "raise Arizona evidentiary claims, cite cases dealing
24  with the admission of evidence, mention the words "fair trial" and then reasonably
25  expect the Arizona Court of Appeals to understand that he is complaining of anything
26  other than evidentiary errors." *Id.* at 1002.

27
28                                      - 26 -

1    This case is entirely on point with Castillo.  By failing to actually argue a federal

2 constitutional violation in the Arizona Court of Appeals, Petitioner did not exhaust his

3 claim. Moreover, as noted by Respondents, Petitioner failed to cite, let alone argue, in

4 any of his pleadings, that a Sixth Amendment or the Fourteenth Amendment violation

5 occurred.  Furthermore, as noted by Respondent, a citation to the Fifth Amendment,

6 without reference to the Fourteenth Amendment, had no application to Petitioner in a

7 state prosecution.  Thus, Petitioner failed to exhaust his claim by properly presenting

8 it as a federal constitutional claim to the Arizona courts. *See Picard*, 404 U.S. at

9 276–78; *Baldwin*, 541 U.S. 27, 31-32.

10    Petitioner's right to direct review having been completed, he would have to

11 present this claim in an additional Petition for Post-Conviction Relief. Under Arizona

12 law, a defendant who was convicted at trial must file a Notice of Post-Conviction Relief

13 within 90 days of the entry of judgment and sentence or within 30 days of the order and

14 mandate affirming the judgment and sentence on direct appeal, whichever is later. Rule

15 32.4(a), Ariz.R.Crim.P. Petitioner already completed his Rule 32 proceeding. If

16 Petitioner were to fairly present this issue in a second Petition for Post-Conviction

17 Relief, such presentation would be untimely. Moreover, this claim does not qualify for

18 any of the timeliness exceptions.  Rules 32.1 and 32.4(a), Ariz.R.Crim.P.  Such a new

19 petition, therefore, would be subject to summary dismissal. *State v. Rosario*, 195 Ariz.

20 264, 266, 987 P.2d 226, 228 (App.1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734

21 (App.1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998)

22 (timeliness is a separate inquiry from preclusion). Moreover, Petitioner would be

23 precluded from raising this claim in a second Petition for Post-Conviction Relief. Rule

24 32.2(a), Ariz.R.Crim.P. This claim, therefore, is procedurally defaulted.  *Park v.*

25 *California*, 202 F.3d 1146, 1150-51 (9th Cir.2000) (federal habeas review is precluded

26 where prisoner has not raised his claim in the state courts and the time for doing so has

27 expired).

28

Accordingly, federal habeas review of Ground One is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Carrier*, 477 U.S. at 488.

Petitioner has not established cause for his procedural default. Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present any of his grounds for relief to the Arizona courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir.1986)(finding that an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir.1988)(finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)

There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule, as demonstrated by his ability to file a petition for post-conviction relief and petition for review - Petitioner merely failed to raise this issue.

Likewise, Petitioner has not satisfied the "fundamental miscarriage of justice" standard, nor has he attempted to do so. Federal review of this claim is barred.

*Recommendation: Ground One*

Petitioner failed to exhaust the claim brought in Ground One in state court in a procedurally appropriate manner, thereby procedurally defaulting this claim. Petitioner has failed to demonstrate cause and prejudice for this procedural default, and federal habeas review is precluded as a matter of law on this ground for relief raised by Petitioner. *See* 28 U.S.C. § 2254(b). Accordingly, this Court recommends that the District Court find that Petitioner is precluded from obtaining federal habeas relief on this claim.

**IV.     RECOMMENDATION**

This Court recommends that the District Court, after its independent review of the record, dismiss this action in its entirety.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Fed.R.Civ.P. 72(b).   If objections are filed the parties should use the following case number: **CIV 06-0648-TUC-FRZ**.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 2nd day of July, 2008.


_____
Bernardo P. Velasco
United States Magistrate Judge